IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRAVIS CURTIS,

                              Plaintiff,

v.

TRINA KROENING-SKIME and DANIEL GOFF,

                              Defendants.

OPINION and ORDER

23-cv-699-jdp

---

      Plaintiff Travis Curtis, proceeding without counsel, is incarcerated at Wisconsin Secure Program Facility. Curtis alleges that defendant prison officials violated his right to practice his Midewiwin religion by barring him from smoking a communal Sacred Pipe and by desecrating the pipe by cleaning it with alcohol pads. Curtis proceeds on claims under the First Amendment to the United States Constitution and under the Religious Land Use and Institutionalized Persons Act.

      Both sides move for summary judgment. Dkt. 17 (Curtis's motion) and Dkt. 22 (defendants' motion). I will grant defendants' motion and deny Curtis's motion because the undisputed facts show that defendants did not substantially burden Curtis's religious practice and that the prison has rescinded its COVID-19-related restrictions on Curtis's congregate services.

UNDISPUTED FACTS

      The following facts are undisputed unless otherwise noted.

      Plaintiff Travis Curtis has been incarcerated at the Wisconsin Secure Program Facility (WSPF) since 2018. Defendant Daniel Goff was the WSPF chaplain from August 2018

through December 2023. Defendant Trina Kroening-Skime has been the corrections program supervisor at WSPF since August 2015.

Curtis belongs to the Bad River Band of the Lake Superior Chippewa Indians. As part of his religious practice in the Midewiwin way, Curtis regularly partakes in programming offered to the Native American "umbrella religion group," including weekly Pipe and Drum services. In that ceremony, inmates congregate together to pray, drum, and smoke a Sacred Pipe, which releases their prayers to the Creator. This process includes ceremonial cleansing of all attendees and items to be used, referred to as a smudge. This involves the burning of sacred herbs, usually a mixture of sage and cedar. Each person and item is cleansed by passing through the smoke. The pipe is then filled, lit, and passed around to each participant to take a turn at offering up their prayers by smoking the pipe. According to Curtis's religious belief, no substances can be placed on the Sacred Pipe other than sage, cedar, and tobacco.

Before the COVID-19 pandemic, all inmates attending the Pipe and Drum ceremony would get a chance to smoke the communal pipe, which is the prison's property. At that time, inmates were not allowed to possess personal pipes due to security concerns about inmates possessing smoking materials in their cells.

Starting in mid-March 2020, DOC facilities instituted a range of precautions to address the pandemic, including restrictions on congregate religious ceremonies. Many congregate services were suspended for several months, including Pipe and Drum ceremonies. In December 2020, ceremonies resumed with smaller groups of inmates and were modified to allow only an assigned pipe carrier to smoke the pipe, while all other participants remained masked; the stem of the communal pipe was disinfected after it was smoked at the end of each ceremony to prevent the spread of disease. Inmates took turns as the designated pipe carrier. Curtis states

2

that these policies violated his religious beliefs by keeping from smoking the Sacred Pipe. I take him to be saying that even if he did have a turn as pipe carrier, the use of disinfectants on the Sacred Pipe desecrated the pipe, making it unusable.

In April 2022, the DOC modified its policies to allow inmates to purchase their own personal Sacred Pipes to use at Pipe and Drum ceremonies; those pipes did not have to be disinfected. Curtis did not purchase a pipe. For prisoners who did not buy a pipe, WSPF's pipe were still used in the ceremonies, with only one inmate being allowed to smoke the pipe, and with defendant Goff using a disinfectant wipe to sanitize the pipe stem.

Curtis's claims concern Pipe and Drum ceremonies occurring on May 25 and June 7, 2023. At the May 25 ceremony, defendant Goff told Curtis that he could not smoke the Sacred Pipe. Curtis told Goff that this interfered with his religious practice. Curtis also saw Goff hold alcohol pads in his hand along with the Sacred Pipe. Curtis told Goff that wiping the Sacred Pipe with an alcohol pad would desecrate the pipe. Nonetheless, Goff used alcohol pads to wipe the Sacred Pipe after the ceremony, stating, "you guys are in the care of the institution and we must ensure that you are safe against germs and disease." Dkt. 19, ¶ 2.

Curtis complained about Goff's actions; he was directed to contact defendant Corrections Program Supervisor Kroening-Skime. Curtis sent a letter to Kroening-Skime about the incident. Records indicate that Kroening-Skime received the letter, but she did not respond to it. She states that it is her practice to forward this type of correspondence to the chaplain.

At the June 7, 2023 Pipe and Drum ceremony, Curtis was again not allowed to smoke the Sacred Pipe, and Goff again used a disinfectant wipe to sanitize the pipe.

On June 16, 2023, DOC policies were amended to return to pre-COVID-19 religious procedures. Since then, all inmates have been able to smoke the communal pipe at Pipe and

3

Drum ceremonies, and chaplains no longer sanitize the communal pipe at the end of the ceremony. Inmates may still use their personal pipes under the new policy.

I will discuss additional facts as they are relevant to the analysis.

ANALYSIS

Curtis brings claims under both the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

**A. First Amendment**

I'll start with Curtis's free exercise claim. To prevail on a First Amendment free exercise claim, a prisoner must show that (1) the defendants imposed a "substantial burden" on his religious exercise; and (2) the burden was not reasonably related to a legitimate penological interest. *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019); *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). A substantial burden puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson*, 809 F.3d at 379. The question whether the restrictions on a prisoner's religious exercise are reasonably related to a legitimate penological interest requires the court to consider four factors: (1) whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; (2) whether the prisoner retains alternatives for exercising the right; (3) the impact that accommodation of the right will have on prison administration; and (4) whether there are other ways that prison officials can achieve the same goals without encroaching on the right. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350–52 (1987) (citing factors articulated in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)).

Curtis contends that his religious practice requires him to smoke the Sacred Pipe at the ceremony and that Goff's wiping of the pipe with alcohol pads desecrated the pipe, making it unusable. I take Curtis to argue that his religious needs could have been satisfied in two ways: (1) being allowed to smoke the Sacred Pipe at each ceremony without Goff wiping it down; or (2) being provided with his own personal Sacred Pipe at state expense.

I will deny Curtis's motion for summary judgment and grant defendants' cross-motion for summary judgment on these claims for two reasons. First, I agree with defendants that their restrictions in place at the relevant time (May and June 2023) did not substantially burden Curtis's religious practice because the DOC allowed inmates to purchase their own Sacred Pipes for personal use that did not require the use of alcohol wipes. Curtis argues that the DOC should have paid for inmates' personal pipes, but neither the First Amendment nor RLUIPA requires prison officials to purchase religious materials for prisoners using government funds. *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005) ("Directed at obstructions institutional arrangements place on religious observances, RLUIPA does not require a State to pay for an inmate's devotional accessories."); *Childs v. Webster*, No. 22-cv-256-jdp, 2024 WL 1619345, at *8 (W.D. Wis. Apr. 15, 2024) (prison staff not required to provide Muslim inmates with prayer schedules). Curtis does not provide any evidence suggesting that he couldn't afford or was otherwise unable to purchase a personal pipe.

Second, even if I concluded that Curtis's religious practice was substantially burdened by the prison's change in policy to bar multiple-prisoner use of the Sacred Pipe and require the use of alcohol wipes, I would grant summary judgment to defendants under the doctrine of qualified immunity.

5

Under this doctrine, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Curtis bears the burden of demonstrating that his rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). He fails in that burden. Given the global pandemic, it was appropriate for officials to balance inmates' religious needs with safety concerns regarding the spread of the virus. *See e.g.*, *Mays v. Dart*, 974 F.3d 810, 820–21 (7th Cir. 2020) (decisions on managing spread of COVID-19 in correctional facilities entitled to deference); *Blake v. West*, No. 21-cv-493-jdp, 2025 WL 915791, at *9 (W.D. Wis. Mar. 26, 2025) (during pandemic, prison officials didn't violate Free Exercise Clause by restricting movement of inmates within prison and barring religious volunteers from entering prison). Shared smoking of the Sacred Pipe presented obvious elevated infectious-spread concerns. And Curtis does not cite any authority—and I am unaware of any—clearly establishing that defendants violated the First Amendment by failing to lift their COVID-19 restrictions on the Pipe and Drum ceremony before mid-2023. So I will grant

6

defendants' motion for summary judgment and deny Curtis's cross-motion regarding his First Amendment claims.

## B.  RLUIPA

Curtis also brings a RLUIPA claim against defendant Kroening-Skime in her capacity as a prison religious-practices supervisor. RLUIPA provides greater protection for religious liberty than the First Amendment. *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015). In applying RLUIPA, courts have placed the initial burden on the plaintiff to show that he has a sincere religious belief and that his religious exercise was substantially burdened. *Id.* at 361–362; *Koger v. Bryan*, 523 F.3d 789, 797–98 (7th Cir. 2008). The burden then shifts to the defendants to demonstrate that their actions further a compelling governmental interest by the least restrictive means. *Cutter*, 544 U.S. at 712.

Despite this more exacting standard, Curtis's RLUIPA claim fails for two reasons. First, I have already concluded that the prison's policies did not substantially burden Curtis's religious practice because he was allowed to purchase a personal Sacred Pipe.

Second, RLUIPA relief is limited to declaratory and injunctive relief. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). To obtain prospective relief, there must be a risk that the defendant will violate the plaintiff's rights again. *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 395 (7th Cir. 2019). As the pandemic has faded, the prison has rescinded its policies against sharing the Sacred Pipe, and Curtis doesn't face a realistic risk of those policies being reimplemented. See, e.g., *DeGroot v. Wisconsin Dep't of Corr.*, No. 23-2464, 2024 WL 1631416, at *2 (7th Cir. Apr. 16, 2024) ("This case, seeking to enjoin a now-rescinded mandate that responded to a version of the pandemic that is no longer around, is therefore moot."), *cert. denied*, 145 S. Ct. 338 (2024); *Goetzen v. York*, No. 21-cv-694-wmc, 2024 WL

7

1619335, at *4 (W.D. Wis. Apr. 15, 2024) ("with Covid-19 under control, there is little risk of any detainee or inmate being denied in-person, congregate religious services"). So I will grant defendants' motion for summary judgment and deny Curtis's cross-motion regarding his RLUIPA claim.

ORDER

IT IS ORDERED that:

1. Plaintiff Travis Curtis's motion for summary judgment, Dkt. 17, is DENIED.
2. Defendants' motion for summary judgment, Dkt. 22, is GRANTED.
3. Defendants' motion to stay the schedule, Dkt. 38, is DENIED as moot.
4. The clerk of court is directed to enter judgment accordingly and close the case.

Entered August 21, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge